NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# Arizona Court of Appeals
## Division One

_____

CHEMEHUEVI INDIAN TRIBE, JACQUES VASQUEZ, also known as
MANUEL JACQUES, CHARLIE WOOD, RONALD ESCOBAR, JACKIE
GORDON, JAY HILL, MARY PETERSEN, VE'LA'AA WHITE, LESTER
MARSTON, and DOES 1 – 10, in their official capacities as officers or
employees of the Chemehuevi Indian Tribe, *Petitioners/Appellees*,

*v.*

GREGORY F. MULLALLY, *Respondent/Appellant*.

No. 1 CA-CV 18-0175
FILED 1-22-2019

_____

Appeal from the Superior Court in Mohave County
No.  S8015CV201301295
The Honorable Charles W. Gurtler, Judge

**AFFIRMED**

_____

COUNSEL

Rapport and Marston, Ukiah, California
By Cooper M. DeMarse
*Counsel for Petitioners/Appellees*

Gregory F. Mullally, Lake Havasu City
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1 Gregory F. Mullally ("Mullally") appeals from the superior court's ruling domesticating a foreign judgment against him. For the following reasons we affirm the ruling.

### FACTUAL AND PROCEDURAL HISTORY

¶2 Mullally worked as a shift manager and slot manager at the Havasu Landing Casino ("casino") that is owned and operated by the Chemehuevi Indian Tribe (the "tribe") and is located on the Chemehuevi Indian Reservation. Mullally was terminated from his employment on November 1, 2007. On December 6, 2007, Mullally filed a complaint in the United State District Court for the Central District of California, (the "district court") asserting a number of claims against various casino employees, and the casino ("tribal defendants"). Because all defendants were being sued in relation to their employment at the casino, the tribe paid for their defense. In January 2008, the tribal defendants filed a motion to dismiss the district court action. On March 3, 2008, the district court dismissed the claims against the casino and its general manager, Jackie Gordon, for lack of subject matter jurisdiction under the doctrine of sovereign immunity. The district court denied the motion to dismiss as to the other defendants but "in the interest of comity, stayed the action to allow Mullally to exhaust tribal remedies."

¶3 Mullally then filed administrative claims with the tribal council under the tribe's claims ordinance. After those claims were denied, he filed an action in the Chemehuevi tribal court for (1) defamation against Manual Jacques; (2) defamation against Charles Wood and Ronald Escobar (tribal governmental officials); (3) fraud against Jay Hill, Jackie Gordon, and Mary Petersen; (4) interference with contract against Jackie Gordon and Mary Petersen; and (5) conversion against Lester Marston (the tribal attorney) and Ve'la'aa White.

¶4 On March 23, 2010, the tribal court issued an Opinion and Order finding in favor of the tribal defendants. The tribal defendants then filed a motion for attorneys' fees pursuant to tribal law. The tribal court was fully briefed from both parties and heard oral argument on the motion. On December 20, 2010, the tribal court entered judgment finding that the tribe was entitled to its attorneys' fees.

¶5 In September 2010, Mullally filed an *ex parte* motion to reopen the district court case which was granted. Mullally was also granted leave to amend his complaint and in May 2011 filed his first amended complaint asserting claims for: (1) intentional interference with contractual relations against Mary Petersen and Jackie Gordon; (2) intentional misrepresentation against Mary Petersen, Jackie Gordon, and Jay Hill; (3) negligent misrepresentation against Mary Petersen, Jackie Gordon, and Jay Hill; and (4) promissory fraud against Mary Petersen, Jackie Gordon, and Jay Hill. The district court granted in part and denied in part a motion to dismiss filed by the tribal defendants. Specifically, the order dismissed claims two through four but denied the motion to dismiss as to claim one, intentional interference with contractual relations.

¶6 On October 12, 2012, the tribal defendants filed a motion for summary judgment as to the final claim. Mullally filed a response and tribal defendants filed a reply. On December 20, 2012, the district court granted the tribal defendants' motion for summary judgment. Mullally appealed the district court's ruling to the United States Court of Appeals for the Ninth Circuit.

¶7 On December 10, 2013, tribal defendants filed the "petitioner's request for order" and supporting documents in Mohave County Superior Court ("superior court"). On December 24, 2013 Mullally filed a motion to stay the proceeding pending resolution of the appeal to the Ninth Circuit, and an objection to petitioner's request for order. On February 5, 2014, Mullally filed an amended objection to petitioner's request for order. The motion to stay the proceedings was granted.

¶8 On December 19, 2016, the Ninth Circuit upheld the district court's rulings. Mullally then filed a request for panel rehearing or hearing *en banc* with the Ninth Circuit. That request was denied. Thereafter, tribal defendants filed a motion to lift the stay of the domestication action in the superior court. Mullally did not oppose lifting the stay but requested that the court allow him to file additional motions and hold a scheduling hearing to address his "amended objection to petitioner's request for order." Mullally claimed that he had additional evidence that was obtained

after the tribal court made its ruling on his claims and therefore "petitioner's request for an order recognizing and enforcing a tribal judgment [was] incomplete" and needed to be amended. In its response to Mullally's request tribal defendants noted that all the additional evidence and arguments Mullally wished to make had been addressed in the federal courts. The superior court issued an order lifting the stay and directing appellees to file a copy of the Ninth Circuit decision in the matter.

¶9 After the superior court reviewed the entire federal court record it issued an order denying Mullally's request for a scheduling conference and recognizing the tribal court's judgment of attorneys' fees. Mullally appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1) (2018).

## DISCUSSION

¶10 We review the trial court's decision to recognize a foreign judgment for an abuse of discretion. *Beltran v. Harrah's Ariz. Corp.*, 220 Ariz. 29, 33, ¶ 18 (App. 2008). Under the principle of comity, "courts of one jurisdiction will give effect to the laws and judicial decisions of another jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Id.* at 33, ¶ 11 (quoting *Leon v. Numkena*, 142 Ariz. 307, 311 (App. 1984)). A tribal judgment shall not be recognized and enforced if the objecting party demonstrates that either the trial court did not have personal or subject matter jurisdiction, or the defendant was not afforded due process. Ariz. R.P. Tribal Ct. Civ. Judgment 5(c). A court is not required to recognize a tribal court judgment under certain conditions including if the judgment was obtained through extrinsic fraud, or if recognition of the judgment would be contrary to fundamental public policy. *Beltran*, 220 Ariz. at 33, ¶ 11; *see also* Ariz. R.P. Tribal Ct. Civ. Judgment 5(d); Restatement (Third) of Foreign Relations Law § 482 (1987).

¶11 Mullally first argues that the superior court erred in recognizing the judgment because it awarded attorneys' fees to the tribe which was not a party to the litigation. Mullally argues that because the tribe was not a party to the original litigation it cannot have standing to sue and therefore Arizona courts don't have subject matter jurisdiction over the case. As a threshold matter, we note that the tribe is not attempting to sue Mullally, rather they are requesting recognition of a tribal judgment in Arizona under Rule 5. Even if the tribe was attempting to sue Mullally, the tribal court found "[b]ecause the [d]efendants were all tribal officials acting within their official capacities for the purposes of [Mullally's] claims, the [t]ribe tendered and paid for the cost of their legal defense . . . " and the

tribe was therefore entitled to attorneys' fees. The place for Mullally to argue that the tribe was not entitled to attorneys' fees was the tribal court. Once the tribal court determined the tribe was entitled to a fee award that judgment is entitled to comity in Arizona's courts. *See Leon*, 142 Ariz. at 311; Ariz. R.P. Tribal Ct. Civ. Judgment 5. As such, the tribe is entitled to have the tribal court judgment recognized and enforced in Arizona courts.

**¶12** Mullally next argues that he was not afforded due process by the tribal court because he did not have the ability to appeal the attorneys' fees award, citing *Wilson v. Marchington* 127 F.3d 805 (9th Cir. 1997). Due process requires that "there has been opportunity for a full and fair trial before an impartial tribunal that conducts the trial upon regular proceedings after proper service or voluntary appearance of the defendant, and that there is no showing of prejudice in the tribal court or in the system of governing laws." *Id.* at 811.

**¶13** *Marchington* lists several factors that a court should consider when deciding if a U.S. citizen was afforded due process. Those factors are "the judiciary was dominated by the political branches of government or by an opposing litigant, [] a party was unable to obtain counsel, to secure documents or attendance of witnesses, or [] have access to appeal or review." *Id.* (quoting Restatement (Third) of Foreign Relations Law § 482 cmt. b (Am Law Inst. 1986)).

**¶14** The record does not support Mullally's claim that the award of attorneys' fees was not reviewed by an appellate court. Although the tribal court does not have an appeals court, the issue of the attorneys' fees award was presented and resolved in the federal courts and they found in favor of the tribe. Additionally, the federal courts found that Mullally had been afforded due process in the tribal court. We agree.

**¶15** Mullally was given the opportunity to respond to the motion for attorneys' fees as well as present evidence before the tribal court but did not avail himself of that opportunity. Although Mullally makes several claims that the clerk of the tribal court frustrated his ability to present his case, the record does not support such a finding. Indeed, even the district court noted that "[Mullally's] representations regarding the events at the Tribal Court are not entirely accurate."

**¶16** Mullally next argues that the superior court violated a fundamental public policy because it did not allow him to "be heard" regarding the failure of due process in the tribal court. Again, the record does not support this argument. Mullally filed an objection to petitioner's

request for an order recognizing and enforcing a tribal judgment and an amended objection. Although the superior court ultimately decided not to have a hearing on the matter, the superior court was fully briefed and able to consider Mullally's claims. As such, Mullally was afforded due process and there was no violation of a public policy. We therefore affirm the superior court's ruling.

¶17 Next Mullally argues that the tribal judgment was obtained by extrinsic fraud because he was prevented from appearing at the tribal court during the hearing for attorneys' fees. As discussed *supra* the record does not support this argument.

¶18 Finally, Mullally argues the superior court made incorrect assumptions which led it to make an improper ruling. Mullally asserts that the superior court believed that he asked for leave to take brief discovery because the tribal judiciary was made up of members of the tribe, but that he really wanted to conduct discovery to prove the defense was paid for by an insurance company. Again, the record does not support this argument. The court order issued by the superior court did not address Mullally's reason for wanting leave for additional discovery. It analyzed whether the tribal court had jurisdiction and whether Mullally was afforded due process and found in the affirmative for both. As the superior court did not abuse its discretion, we affirm its ruling.

**CONCLUSION**

¶19 For the foregoing reasons, we affirm the superior court's ruling recognizing the tribal courts order awarding attorneys' fees.



AMY M. WOOD • Clerk of the Court
FILED: AA